11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Julio
Ramirez Mestas

Appellant

Vs.
Nos. 11-01-00234-CR, 11-01-00235-CR, & 11-01-00236-CR -- Appeals from
Dallas County

State
of Texas

Appellee

 

In Cause No. 11-01-00234-CR, the trial court convicted
appellant, upon his plea of guilty, of the offense of failure to stop and
render aid after a collision.  A plea
bargain agreement was not reached.  In
Cause No. 11-01-00235-CR, the jury convicted appellant of the offense of
indecency with a child younger than 17 years of age.  In Cause No. 11-01-00236-CR, the trial court convicted appellant,
upon his plea of guilty, of evading arrest or detention.  A plea bargain agreement was not reached in
this case, either.  In each case, the
trial court found the 2 enhancement allegations to be true and assessed
appellant=s punishment at
confinement for 55 years and a $1,000 fine. 
We affirm.

In each appeal, appellant=s court-appointed counsel has filed a
brief in which he states that, after a thorough examination of the appellate
record, he can find no sufficient grounds on which point or points of error can
be based.  Counsel has furnished
appellant with a copy of the brief and advised appellant of his right to review
the record and file a pro se brief.  A
pro se brief has not been filed. 
Counsel has complied with the procedures outlined in Anders v.
California, 386 U.S. 738 (1967); Stafford v. State, 813 S.W.2d 503 (Tex.Cr.App.1991);
High v. State, 573 S.W.2d 807 (Tex.Cr.App.1978); Currie v. State, 516 S.W.2d
684 (Tex.Cr.App.1974); and Gainous v. State, 436 S.W.2d 137 (Tex.Cr.App.1969).








Following the procedures outlined in Anders, we have
independently reviewed the record.   In
the cases in which appellant entered guilty pleas, the record reflects that, on
September 8, 2000, appellant was driving when a police car pulled behind him
and turned on its lights.  Eugene Jacob
Simien, appellant=s stepson, testified that he was a passenger in
appellant=s vehicle.  Simien stated that appellant began Achewing his
food roughly@ and Abreathing hard.@  When appellant Apressed on the
gas,@ Simien told
appellant to stop.  Appellant answered
that he could not stop because there was a warrant out for his arrest.  A chase ensued in which appellant drove
between 70 and 100 miles per hour. 
Traffic was light; and, at times, appellant drove against oncoming
vehicles.  Appellant=s vehicle
collided with a Mustang; the air bag inflated; and appellant escaped his
vehicle out of the passenger=s side door.  Simien saw appellant jump over a wire fence or gate and run off. 

Dallas Police Officer Susan Iliff testified that she was on
routine patrol when she ran a license plate check on appellant=s vehicle.  The computer showed that there was an
outstanding warrant, and Office Iliff attempted to stop appellant=s vehicle.  Appellant sped away.  Officer Iliff testified that she drove 70 to
75 miles per hour in an attempt to just try to keep appellant in sight.  Appellant Ablew@ a red light, crossed over into oncoming
traffic, struck a vehicle head on, and caused a Aserious, serious accident.@  Appellant fled but was eventually
apprehended. 

In the 2001 jury trial on the indecency-with-a-child
offense, the victim testified that appellant was her stepfather, that she was
16 years old at the time of trial, and that during the 1999 Thanksgiving
holidays appellant placed his hand under her T-shirt and bra.  The victim stated that, that night,  appellant had been drinking and had fallen
asleep in the car.  The victim was in
the living room on the couch.  She was
wearing a T-shirt, shorts, a bra, and panties and was under a blanket.  Appellant=s three sons were on the living room
floor. The children had been talking. 
When they heard appellant enter the home sometime after 1:00 a.m., they
pretended to be asleep because they did not want to get into trouble for still
being awake.  Appellant approached the
back of the couch where the victim normally slept.  The victim testified that appellant Aslowly@ moved his hand
Athrough...the
top@ of her shirt
and went underneath her shirt and her bra Agroping@ with his hand. He then moved his hand
back out and walked away.  When he
approached her and placed his hand under her shirt a second time, the victim
raised up and screamed, ANo!@ 
The victim went into her mother=s room and told her mother that appellant
had touched her.  When the victim tried
to call 9-1-1, appellant Ayanked@ the phone away and said that he was not
going to jail. 








Joshua Mestas testified that appellant was his father.  During the 1999 Thanksgiving holidays, the
family had gone to his aunt=s friend=s house. 
They returned around midnight, and appellant stayed in the car because Ahe was probably
drunk.@  Mestas testified that the victim was on the
couch where she usually slept and that he and his two brothers were on a
mattress on the floor.  When appellant
came into the house, Mestas saw appellant walk behind the couch and place his
hand under the victim=s shirt. 
The victim began to scream, and appellant ran away from the couch.  Appellant left the house 10 to 20 minutes
after the incident and was not there when the police arrived.  Mestas testified that appellant was at home
when he awoke in the morning. 

During the punishment phase, the State introduced into
evidence two pen packets.  The pen
packets reflected that appellant had prior convictions for aggravated sexual
assault and attempted sexual assault. 

In reviewing claims of legal sufficiency, we review all of
the evidence in the light most favorable to the verdict to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307 (1979); Clewis v. State, 922 S.W.2d 126
(Tex.Cr.App.1996).  In deciding whether
the evidence is factually sufficient to support the conviction, we review all
of the evidence in a neutral light favoring nether party to determine if the
verdict is clearly wrong and manifestly unjust or  against the great weight of the evidence.  Johnson v. State, 23 S.W.3d 1
(Tex.Cr.App.2000); Clewis v. State, supra. 
We review the fact finder=s weighing of the evidence and cannot
substitute our judgment for that of the fact finder.  Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State,
supra.  Due deference must be given to
the fact finder=s
determination, particularly concerning the weight and credibility of the
evidence.  Johnson v. State, supra;
Jones v. State, 944 S.W.2d 642 (Tex.Cr.App.1996), cert. den=d, 522 U.S. 832
(1997).  This court has the authority to
disagree with the fact finder=s determination Aonly when the
record clearly indicates such a step is necessary to arrest the occurrence of a
manifest injustice.@  Johnson
v. State, supra at 9.








In Cause Nos. 11-01-00234-CR and 11-01-00236-CR (the guilty
plea cases), the trial court, as the finder of fact, was the sole judge of the
weight and credibility of the testimony. 
DeBolt v. State, 604 S.W.2d 164 (Tex.Cr.App.1980); Austin v. State, 794
S.W.2d 408 (Tex.App. - Austin 1990, pet=n ref=d). 
In Cause No. 11-01-00235-CR, the jury, as the finder of fact, was the
sole judge of the weight and credibility of the witnesses=
testimony.  TEX. CODE CRIM. PRO. ANN.
art. 36.13 & 38.04 (Vernon 1979 & 1981).  After reviewing all of the evidence in the light most favorable to
verdict, we find that a reasonable fact finder could have concluded that
appellant committed each of the offenses and that the evidence is legally sufficient
to support all three convictions.  The
evidence, when reviewed in a neutral light, is factually sufficient; and we
find that the convictions are neither clearly wrong and manifestly unjust nor
against the great weight of the evidence. 

In order to determine whether appellant=s trial counsel
rendered ineffective assistance at trial, we must first determine whether
appellant has shown that counsel=s representation fell below an objective
standard of reasonableness and, if so, then determine whether there is a
reasonable probability that the result would have been different but for
counsel=s errors.  Strickland v. Washington, 466 U.S. 668
(1984); Hernandez v. State, 988 S.W.2d 770 (Tex.Cr.App.1999).  We must indulge a strong presumption that
counsel=s conduct fell
within the wide range of reasonable professional assistance, and appellant must
overcome the presumption that, under the circumstances, the challenged action
might be considered sound trial strategy. 
Stafford v. State, supra at 508-09.

In Cause Nos. 11-01-00234-CR and 11-01-00236-CR, the record
does not reflect that counsel=s representation was not within the range
of competence demanded of attorneys in criminal cases or that there is a
reasonable probability that, but for counsel=s error, appellant would not have pleaded
guilty but would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52 (1985); Ex parte Morrow, 952 S.W.2d
530 (Tex.Cr.App.1997).  In all three
appeals, the record reflects that trial counsel provided reasonably effective
assistance.  We agree that the appeal is
without merit.

The judgments of the trial court are affirmed.

 

PER CURIAM

 

May
23, 2002

Do
not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists
of: Arnot, C.J., and

Wright, J., and
McCall, J.