Opinion filed September 11, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed September
11, 2008

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00150-CR

                                                    __________

 

                               TOBIN BARRI CAMPBELL, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 35th District Court

                                                          Brown
County, Texas

                                                 Trial
Court Cause No. CR17934

 



 

                                             M
E M O R A N D U M   O P I N I O N

The
trial court convicted Tobin Barri Campbell of the state jail felony offense of
failing to comply with sex offender registration requirements and assessed
punishment at confinement for one year.  We modify and affirm.








Chapter
62 of the Texas Code of Criminal Procedure sets forth the reporting
requirements for persons convicted of a sexual offense.  Tex. Code Crim. Proc. Ann. ch. 62
(Vernon 2006 & Supp. 2007).[1]  If a person
who is required to register intends to change his or her address, Athe person shall, not later
than the seventh day before the intended change, report in person to the local
law enforcement authority designated as the person=s primary registration authority . . . and
provide the authority . . . with the person=s
anticipated move date and new address.@ 
Article 62.055(a).[2]  The
indictment alleged that appellant was required to register with the local law
enforcement authority in the City of Brownwood Abecause
of a reportable conviction for indecency with a child@ and that, on or about May 16, 2005, appellant
Aintentionally,
knowingly, or recklessly fail[ed] to notify the said municipality of a change
of address.@

In
his sole issue on appeal, appellant contends that the evidence was legally and
factually insufficient to support his conviction because the State failed to
exclude every other reasonable hypothesis.  The Court of Criminal Appeals has
rejected the use of the reasonable-hypothesis construct in the evaluation of
the legal sufficiency of the evidence.  Wilson v. State, 7 S.W.3d 136,
141 (Tex. Crim. App. 1999); Geesa v. State, 820 S.W.2d 154, 159 (Tex.
Crim. App. 1991), overruled in part on other grounds by Paulson v. State,
28 S.W.3d 570 (Tex. Crim. App. 2000).  The existence of alternative reasonable
hypotheses may be relevant to, but is not determinative in, a factual
sufficiency review.  Wilson, 7 S.W.3d at 141.  Therefore, we will apply
the well-recognized standards of review for legal and factual sufficiency
challenges.  








To
determine if the evidence is legally sufficient, we must review all of the
evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979); Jackson
v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).  To determine if the
evidence is factually sufficient, the appellate court reviews all of the
evidence in a neutral light.  Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006) (overruling in part Zuniga v. State, 144 S.W.3d 477
(Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex.
Crim. App. 2000); Cain v.  State, 958 S.W.2d 404, 407-08 (Tex.
Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996).  Then, the reviewing court determines whether the evidence supporting
the verdict is so weak that the verdict is clearly wrong and manifestly unjust
or whether the verdict is against the great weight and preponderance of the
evidence.  Watson, 204 S.W.3d at 414-15; Johnson, 23 S.W.3d at
10-11.  In a bench trial, the trial court, as the finder of fact, is the sole
judge of the credibility of the witnesses and the weight to be given their
testimony.  Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App.
1992); DeBolt v. State, 604 S.W.2d 164, 167 (Tex. Crim. App.  1980); Austin
v. State, 794 S.W.2d 408, 412 (Tex. App.CAustin
1990, pet. ref=d).

The
evidence showed that, on March 4, 1996, appellant was convicted of the offense
of indecency with a child.  Based on this conviction, appellant was required to
register as a sex offender.  Appellant registered as a sex offender with the
Brownwood Police Department.  On March 19, 2004, appellant notified
personnel at the Brownwood Police Department that he was moving to
Fredericksburg, Texas.  On October 12, 2004, appellant notified the Brownwood
Police Department that he had moved back to Brownwood and that his new address
was A1302-8 Brooks,@ Brownwood, Texas.  On
April 18, 2005, appellant signed a sex offender update form as part of an
annual update.  Appellant did not report a change of address on the update
form.

On
May 14 or 15, 2005, Officer Zane Taylor of the Brownwood Police Department
visited appellant=s
registered address on Brooks Street for the purpose of verifying that appellant
lived at that address.  Officer Taylor spoke with Elmer Bryan McFarland, a
resident of that address.  Officer Taylor asked to speak with appellant. 
McFarland told him that A[appellant]
was not there, that he wasn=t
living there.@  On May
16, 2005, Officer Taylor went back to the residence.  McFarland told him that
he had spoken with appellant and had advised him that the police were looking for
him and that appellant had responded that Ahe
didn=t care, that [the
police] knew where to find him.@ 
The evidence showed that appellant=s
wife, Sharon Campbell, resided at 1206 Durham Street in Brownwood.  Officer
Taylor testified that he went to that address but did not make contact with
anyone at the house.  He said that he was unable to locate appellant.

McFarland
testified that he and appellant had both lived with David Dodd at the Brooks
Street address.  He said that appellant moved into the house during the fall of
2004 and, at that time, brought clothing and personal effects with him. 
McFarland testified that Dodd stayed in the bedroom of the house and that he
and appellant shared the living room.  He said that appellant frequently stayed
overnight at the house but that, at times, appellant stayed overnight at
Campbell=s house.








McFarland
testified that Officer Taylor visited the house in May 2005.  He said that
Officer Taylor was looking for appellant.  He told Officer Taylor that
appellant was not at the house.  Appellant had taken his clothing and had moved
out of the house about a week before Officer Taylor=s visit, but he had left some items at the
house when he moved out.  At that time, McFarland believed that appellant was
going to Fredericksburg because appellant=s
father had died, that appellant would stay in Fredericksburg for a while, and
that appellant would then go to Campbell=s
house.  During questioning by the prosecutor, McFarland said that appellant did
not return to the house after he moved out.  However, during questioning from
appellant=s counsel,
McFarland said that he believed that, sometime in June 2005, appellant picked
up the items that he had left at the house.  However, McFarland was not at the
house when the items were taken.  McFarland did not know where appellant lived
after he left the Brooks Street house.

Campbell
testified that she lived at 1206 Durham.  Her daughter, Christina Sonstegard,
and Sonstegard=s two
children lived with her; Campbell was married to appellant.  At times,
appellant stayed at her house overnight, but he had not lived at her house. 
She had not lived with appellant since 1997.  Campbell did not want to live
with appellant because he was an alcoholic and needed help.  Appellant lived at
1302 Brooks and, at some point, moved to Fredericksburg.  Campbell did not know
when he moved to Fredericksburg.

            Sonstegard
testified that appellant did not work during May 2005 and that, if appellant
had been at the house on Brooks Street, she would have expected someone who
lived there to see him. She also said that appellant=s sister, Renee, came to Brownwood twice in
May 2005 to see appellant.  Renee arrived in Brownwood for the second visit
between May 24 and May 26.  When Renee arrived for both visits, appellant had
to be picked up from Dodd=s
house (the Brooks Street house).








Sonstegard
further testified that appellant=s
father died on March 10, 2005.  On May 19, 2005, appellant and Renee went to
visit their brother, who was in prison in Tulia or Amarillo, to talk with him
about their father=s
death.  Sonstegard later changed her testimony and said that appellant and his
sister left on the trip to see their brother between May 25 and May 27. 
Appellant and Renee picked up some of appellant=s
clothes from Dodd=s
house before they left on the trip; they returned to Brownwood on May 28,
2005.  Sonstegard said that, on about May 30, 2005, appellant told personnel at
the Brownwood Police Department he was moving to Fredericksburg and that he
then left for Fredericksburg.

The
evidence showed that, on June 1, 2005, appellant notified personnel at the
Brownwood Police Department that he was moving to 1747 North U.S. Highway 87 in
Fredericksburg.  Sonstegard testified that, during June, she and Campbell went
to Dodd=s house to
pick up a number of items that belonged to appellant, including clothes, a
blanket, and a shaving kit.

As the sole judge of the credibility of the
witnesses, the trial court was free to believe or disbelieve any part of the
testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). 
We have set out the standards of review.  When we apply those standards,
we conclude that the evidence was legally and factually sufficient to support
appellant=s
conviction.  We overrule appellant=s issue.

The
trial court=s judgment
inadvertently reflects that appellant pleaded guilty to the offense and that
the place of appellant=s
confinement would be the Institutional Division of the Texas Department of
Criminal Justice.  The record shows that appellant pleaded not guilty to the
offense. We modify page one of the trial court=s
judgment to reflect the following: 

PLEA TO OFFENSE: 
Not Guilty

 

PUNISHMENT AND
PLACE OF CONFINEMENT:  One (1) year in the State Jail DivisionBTDCJ

 

We
modify page two of the trial court=s
judgment to reflect that appellant Aentered
a plea of not guilty to the offense.@ 


As
modified, the judgment of the trial court is affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

September 11,
2008

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,


McCall, J., and Strange, J.









[1]By Act of May 26, 2005, 79th Leg., R.S., ch. 1008, ' 1.01, 2005 Tex. Gen. Laws 3385, 3386, effective
September 1, 2005, the legislature reenacted Chapter 62, renumbered the
articles, and amended some provisions.  A prior version of Chapter 62 applies
in this case because the conduct at issue occurred before September 1, 2005.  See
Act of May 30, 2003, 78th Leg., R.S., ch. 347, 2003 Tex. Gen. Laws 1505. 
Because the amendment does not affect our analysis, we will refer to the
current statute in the body of the opinion.





[2]See former Article
62.04(a) at Act of May 30, 2003, 78th Leg., R.S., ch. 347, ' 7, 2003 Tex. Gen. Laws 1505, 1509.